UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA MIRALLE, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>THE CITY OF OAKLAND, et al.,<br><br>        Defendants. | Case No. 18-cv-06823-HSG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 3 |

Pending before the Court is a motion for preliminary injunction filed by Plaintiffs Anita Miralle, Jodii Le'Grand Everett I, Tina Scott, Aiyahnna Johnson, Lucas D. Brown, and Irvin Josue Hernandez Ortega. Dkt. No. 3. Plaintiffs seek an injunction preventing Defendant City of Oakland from removing them from their encampment. For the following reasons, the Court DENIES the motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 27, 2018, Plaintiffs moved to a city-owned parcel at 606 Clara Street and 9418 Edes Avenue in Oakland. Dkt. No. 35-2 ¶¶ 15, 18; Dkt. No. 39-1 at Miralle Decl. ¶ 31. Once there, Plaintiffs established an encampment called the "Housing & Dignity Village" ("HDV"), "a site for sober, unsheltered women and their families." Dkt. No. 39-1 at Miralle Decl. ¶ 31. When notified of the encampment, the City contacted Plaintiffs to notify them that they were trespassing. Dkt. No. 35-1 ¶ 19, Ex. A. On November 7, 2018, the City posted a "Notice to Vacate Illegal Encampment" at HDV, indicating that the site would be "clear[ed] and close[d]" on November 10, 2018 between 8 a.m. and 4 p.m. Dkt. No. 35-1 ¶ 23; Dkt. No. 35-2, Ex. J; Dkt. No. 39-1 at Miralle Decl. ¶ 31.

On the afternoon of November 9, 2018, Plaintiffs filed a complaint, motion for temporary restraining order, and motion for preliminary injunction enjoining Defendants from removing

Plaintiffs from HDV. Dkt. Nos. 1, 2 and 3. That same evening, the Court granted Plaintiffs' request for a temporary restraining order pending a hearing on November 13, 2018, the earliest available date. Dkt. No. 20. At the November 13 hearing, the Court ordered that the temporary restraining order remain in place until the matter was fully briefed and argued. Dkt. No. 31. On November 26, 2018, the Court heard argument on the fully-briefed preliminary injunction motion.

## II.     LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking preliminary injunctive relief must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (internal quotation marks omitted). Under either standard, Plaintiff bears the burden of making a clear showing that it is entitled to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## III.    ANALYSIS

Plaintiffs contend, based on the Ninth Circuit's recent holding in *Martin v. City of Boise*, that the City's attempt to remove them from HDV's current location on public land is a violation of their Eighth Amendment rights. Dkt. No. 39 at 19–24 (citing *Martin v. City of Boise*, 902 F.3d 1031 (9th Cir. 2018)). Plaintiffs additionally contend, based on the November 7 Notice to Vacate and previous site closures, that closure of HDV would violate their due process rights under the Fourteenth Amendment. *Id.* at 24–32. The Court addresses each argument in turn.

### A.    Eighth Amendment Claim

The Ninth Circuit established in *Martin* that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for

homeless individuals who cannot obtain shelter." *Martin*, 902 F.3d at 1048. "[A]s long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter." *Martin*, 902 F.3d at 1048. The Ninth Circuit emphasized that its holding was a "narrow one," and explained that:

> Naturally, our holding does not cover individuals who *do* have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it. Nor do we suggest that a jurisdiction with insufficient shelter can *never* criminalize the act of sleeping outside. Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible. So, too, might an ordinance barring the obstruction of public rights of way or the erection of certain structures. Whether some other ordinance is consistent with the Eighth Amendment will depend, as here, on whether it punishes a person for lacking the means to live out the 'universal and unavoidable consequences of being human' in the way the ordinance prescribes.

*Martin*, 902 F.3d at 1048 and n.8.

The City has represented that any encampment closure will be conducted in accordance with its Standard Operating Procedure, which, along with certain notice requirements discussed below, includes an offer of shelter beds and resources to individuals at the encampment prior to and during the closure, as well as an offer of assistance with moving any belongings. Dkt. No. 35-1 ¶ 27. The City further committed at the November 26 hearing to provide temporary indoor bed space for each of the 13 residents of HDV. *See also* Dkt. No. 35 at 17 (citing Dkt. No. 35-1 ¶ 23; Dkt. No. 35-3 ¶¶ 10–12).

Plaintiffs are not faced with punishment for acts inherent to their unhoused status that they cannot control. Nor are Plaintiffs unable to obtain shelter outside of HDV, based on the City's commitments in its papers and at the hearing. Plaintiffs' theory would therefore require the Court to extend the right described in *Martin* well beyond the parameters set by the Ninth Circuit. *Martin* does not establish a constitutional right to occupy public property indefinitely at Plaintiffs' option.[1] Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success or

---

[1] In the alternative to requesting an injunction allowing them to establish a *permanent* encampment

3

raised serious questions as to the merits of their Eighth Amendment claim.

### B. Fourteenth Amendment Claim

"Because homeless persons' unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, the City must comport with the requirements of the Fourteenth Amendment's due process clause if it wishes to take and destroy them." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). Before any such seizure, the government "must announce its intentions and give the property owner a chance to argue against the taking." *Id.*

Plaintiffs contend that the City has established a "pattern and practice" of unlawfully seizing and destroying property during the process of clearing homeless encampments. Dkt. No. 39 at 24. Plaintiffs cite to the Notice to Vacate, Dkt. No. 35-2, Ex. C, which provides no information for the retrieval of remaining property, and to several declarations describing the City's practice of destroying property immediately after an encampment is cleared. Dkt. No. 39 at 24 (citing Dkt. No. 39-1 at Hernandez Decl. ¶¶ 4, 8, 11; at Ewing Decl. ¶¶ 3–4; at Hansen Decl. ¶ 8; at Brum Decl ¶¶ 13–14; at Semien Decl. ¶¶ 6–7; at Opdyk-Orthmeyer Decl. ¶ 13).

The City has represented that any encampment closure will be conducted in accordance with its Standard Operating Procedure, Dkt. No. 35-2, Ex. B, which requires: (1) posting of a 72-hour notice of closure at "multiple visible locations," Dkt. No. 35-2 ¶ 11; (2) storage of any property left at the site after closure other than property deemed unsafe or hazardous ("such as food, soiled items, or items for personal hygiene") for 90 days, *id.* ¶¶ 12–14; (3) posting of a "Notice of Collected Property" at the encampment, giving information for retrieving belongings, *id.* ¶ 14; and (4) an offer of assistance with moving any belongings after the closure, Dkt. No. 35-1 ¶ 27.

The City's Standard Operating Procedure, on its face, provides adequate notice and opportunity for Plaintiffs to be heard before property is seized. Dkt. No. 35-2, Ex. B. The Court

---

at HDV, Plaintiffs request "a more narrow order allowing the residents of [HDV] to be allowed to stay until a suitable location for their encampment can be found." Dkt. No. 39 at 24. Given the parties' prolonged dispute regarding the suitability of various sites proffered by Plaintiffs and by the City, *see* Dkt. No. 35-1 ¶ 21, Ex. B; Dkt. No. 39-1 at Miralle Decl. ¶¶ 16–18, this request does not meaningfully limit Plaintiffs' proposal.

1  notes that the Standard Operating Procedure predates the experiences described in many of the
2  declarations provided by Plaintiffs, which involved the immediate destruction of belongings left at
3  encampments with no meaningful opportunity for storage or retrieval.  *Compare* Dkt. No. 35-2,
4  Ex. B (most recent revision date February 26, 2013) *with* Dkt. No. 39-1 at Hernandez Ortega Decl.
5  ¶¶ 4, 8, 11 (2016 evictions); at Ewing Decl. ¶¶ 3–4 (2017 eviction); at Brum Decl ¶¶ 3, 13–14
6  (evictions approximately every four months since 2013); at Opdyk-Orthmeyer Decl. ¶¶ 4, 12–13
7  (four evictions since 2013).  These practices, if carried out at HDV, would raise serious questions
8  with respect to Plaintiffs' still-pending Fourteenth Amendment claims.

9  However, given the City's representation that it will follow its stated procedures, and the
10 notice already provided by the City, *see* Dkt. No. 35-2, Ex. C, the Court does not find a likelihood
11 that Plaintiffs' due process claim will succeed, or find that Plaintiffs have raised serious questions
12 going to the merits.  *See Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2017 WL 4922614,
13 at *6 (N.D. Cal. Oct. 31, 2017) (finding no likelihood of success or serious question on the merits
14 of a *Lavan* Fourteenth Amendment claim where City policy was to give Plaintiffs "an opportunity
15 to remove their personal effects," via a 72-hour notice, and to "notif[y] of the location of any
16 seized property" that was stored). [2]

17 **C.   Remaining Factors**

18 Even though the above findings are dispositive, the Court also finds that the balance of the
19 equities does not tip sharply in favor of Plaintiffs.  The Court is not blind to the reality that
20 removing the Plaintiffs from the site where they are currently living is inevitably disruptive of

---

[2] Plaintiffs additionally contend for the first time in their reply brief that eviction by the City would infringe their substantive due process rights by affirmatively placing them in a situation of danger.  Dkt. No. 39 at 29–32.  Plaintiffs contend that removing individuals from HDV would force them "to move anywhere else in the City where they will not have shelter, safety or the ability to camp together in their sober intentional community." *Id.* at 30.  "[S]tate actors may be held liable where they affirmatively place an individual in danger, by acting with deliberate indifference to [a] known or obvious danger in subjecting the plaintiff to it." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006) (internal citations and quotation marks omitted).  However, in this instance, the dangers Plaintiffs identify are fully mitigated by the City's offer of shelter beds at the time of removal.  The Court also does not adopt the Plaintiffs' novel substantive due process theory (which is based largely on a single district court case, *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079 (E.D. Cal. 2012)).  Plaintiffs thus have failed to raise a serious question as to the merits of this unpled claim.

1     their lives.  The resulting harm, however, is significantly mitigated by the City's commitment to
2     provide temporary shelter and storage services to the residents of HDV.  Moreover, forcing
3     Defendants to permit HDV to remain at Plaintiffs' chosen site on city-owned land has the potential
4     to create serious liability exposure for the City.  Dkt. No. 35 at 23.  Finally, while the record
5     reflects divergent perspectives as to whether HDV is a resource or a detriment to the surrounding
6     neighborhood, the Court cannot conclude that the public interest weighs conclusively in favor of
7     enjoining the City from exercising its considered judgment as to how to best maintain public
8     health and safety.

## IV.   CONCLUSION

The parties here agree on at least one thing:  the City of Oakland is experiencing what can only be described as a homelessness crisis.  Dkt. No. 35 at 5; Dkt. No. 39 at 1.  The City's submissions make clear that it has devoted and continues to devote substantial public resources to addressing this crisis.  Plaintiffs disagree in good faith with the adequacy of the City's response.  The decisions made by the City in its efforts to address the homelessness crisis are the type that lie at the very core of a government's policymaking discretion, and there is no easy solution to this extraordinarily complex challenge.

But the question before the Court is not whether the City's policy approach, including its Encampment Management Policy, is the ideal policy approach.  Instead, the Court's narrow inquiry is whether the Constitution forbids the City from making difficult decisions it judges to be in the best interests of all its residents by implementing a policy it believes appropriately balances the important individual and community rights implicated by encampments on public land in Oakland.  *See Lavan*, 693 F.3d at 1033 ("This appeal does not concern the power of the federal courts to constrain municipal governments from addressing the deep and pressing problem of mass homelessness or to otherwise fulfill their obligations to maintain public health and safety.").  Given the factual record and the representations made by the City, the Court cannot find that Plaintiffs have demonstrated sufficient likelihood of success or serious questions on the merits of either their Eighth or their Fourteenth Amendment claim.  For that reason, the temporary restraining order entered on November 9, 2018 is VACATED, and Plaintiffs' motion for

preliminary injunction is DENIED.

Should the City choose to renew its efforts to remove Plaintiffs from the HDV site, it must provide a new notice to vacate and otherwise comply with all of its Policies and Procedures, including by providing the new notice at least 72 hours in advance, offering shelter beds to each of the 13 HDV residents evicted, providing notice and storage of collected property, and otherwise adhering to all representations made in its filings and at the November 26 hearing.

**IT IS SO ORDERED.**

Dated: 11/28/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge